NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3873
_____

UNITED STATES OF AMERICA

v.

ELI CHABOT; RENEE CHABOT;

Eli Chabot,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-14-cv-03055)
District Judge: Freda L. Wolfson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 6, 2017

Before: SMITH, *Chief Judge*, HARDIMAN, and KRAUSE, *Circuit Judges*.

(Filed: March 13, 2017)
_____

OPINION*
_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Eli Chabot appeals an order of the District Court holding him in civil contempt for failing to comply with the Court's enforcement order of a summons issued by the Internal Revenue Service. Chabot argues that the District Court erred by shifting to him the burden of establishing his inability to comply with the enforcement order. Because the District Court correctly shifted this burden to Chabot, we will affirm.

I

The IRS is investigating Eli and Renee Chabot's income tax returns from 2006 through 2009. Having been informed that the Chabots had unreported foreign financial accounts, the Service issued administrative summonses demanding records that were required to be maintained by the Bank Secrecy Act of 1970, 12 U.S.C. § 1829b and 31 U.S.C. § 5311, *et. seq.*, and associated regulations. The Chabots did not claim they did not possess the requested documents. Instead, they asserted their Fifth Amendment privilege against self-incrimination and refused to produce the records.

The Government petitioned the District Court to enforce the summonses. The Court issued an enforcement order finding that the documents fell within the required records exception to the Fifth Amendment privilege. We affirmed the District Court in *United States v. Chabot*, (*Chabot I*), 793 F.3d 338 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 559 (2015).

After our decision in *Chabot I*, the Government moved to have the Chabots held in civil contempt for disobeying the enforcement order, and the District Court issued an

2

order to show cause. The Chabots responded that "no [responsive] documents existed" because they lacked "the requisite interest in any foreign bank accounts [from 2006 to 2009] as required under the Bank Secrecy Act." App. 85, 86. At a hearing on the motion, Eli Chabot also stated that he had suffered a stroke, which may have affected his memory and his ability to testify. Based on this testimony, the District Court postponed the proceedings, ordered Eli to submit a report from a doctor evaluating his ability to testify, and directed the Chabots' counsel to investigate their connection to foreign financial accounts. The Chabots responded by submitting supplemental evidence, including a medical report questioning Eli's capacity to testify. They also submitted several letters from their foreign counsel and a report from an accounting firm denying that the Chabots had the requisite connection to any foreign financial accounts necessary for them to maintain documents under the Bank Secrecy Act. The District Court received this evidence and resumed the contempt hearing. After the hearing, the Government withdrew its motion to hold Renee Chabot in contempt.

As to Eli Chabot, the District Court found that the Government satisfied its initial burden of producing clear and convincing evidence that he disobeyed a valid enforcement order. The Court explained that because the Government satisfied its initial burden, Chabot had to establish his "present inability to comply with the order in question." Gov't Br. 13. The Court found that Chabot failed to establish he lacked the requisite connection to the foreign financial accounts and held Chabot in civil contempt, ordering him to pay $250 per day as a coercive sanction. Chabot filed this appeal.

3

II[1]

Chabot claims the District Court erred by shifting the burden of production to him. He suggests that once he claimed the summoned documents never existed, the Government had to prove their existence by clear and convincing evidence. He also argues that by not requiring the Government to prove the existence of the documents, the District Court punished him for asserting his privilege against self-incrimination at the enforcement proceedings.

A

Chabot's argument regarding the burden of proof contravenes Supreme Court precedent. In a civil contempt proceeding, the movant must establish by clear and convincing evidence: "(1) that a valid court order existed; (2) that the [alleged contemnor] had knowledge of the order; and (3) that the [alleged contemnor] disobeyed the order." *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990); *see also Harris v. City of Philadelphia*, 47 F.3d 1311, 1321 (3d Cir. 1995) (requiring the evidence to be clear and convincing). Chabot concedes that the Government satisfied its initial burden in the case. Indeed, there is no dispute that: (1) the enforcement order was valid; (2) Chabot

---

[1] The District Court had jurisdiction under 26 U.S.C. §§ 7402(b) and 7604(a). We have jurisdiction under 28 U.S.C. § 1291. *Chabot I*, 793 F.3d at 341. We review the District Court's allocation of the burden of proof de novo. *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 210 (3d Cir. 2006). We review the contempt sanction for abuse of discretion. *Harris v. City of Philadelphia*, 47 F.3d 1311, 1321 (3d Cir. 1995).

had knowledge of the order; and (3) Chabot produced no documents in response to the order.

Once the movant establishes these elements, the alleged contemnor must produce the summoned records. If he refuses to do so, the "burden of production" shifts to the alleged contemnor to establish "a *present* inability to comply with the order in question." *United States v. Rylander*, 460 U.S. 752, 757 (1983) (citations omitted). Consistent with *Rylander*, Chabot had to establish his inability to comply with the order, and the District Court was correct in so ruling.

This result vindicates the purpose of civil contempt proceedings. We permit an alleged contemnor to present evidence of his inability to comply with an enforcement order because civil contempt is remedial and, in cases like this one, intended "to coerce the defendant into compliance with the court's order." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994) (citation omitted). If the alleged contemnor satisfies the court that compliance with the order is impossible, the court will not hold him in civil contempt. *Rylander*, 460 U.S. at 757. Here, Chabot failed to do so.

B

Chabot's argument that he is being punished for asserting his Fifth Amendment privilege against self-incrimination also fails. There were two consequences to Chabot's assertion of the privilege. First, he waived the argument that the documents were not in his possession at the enforcement proceedings. *Id.* But Chabot still could have defended his contempt charge by establishing that he lacked the ability to comply with the order.

5

Because Chabot failed to raise the defense originally, the District Court could (and did) infer present possession from past possession. *Chadwick v. Janecka*, 312 F.3d 597, 610 (3d Cir. 2002) (citing *Maggio v. Zeitz*, 333 U.S. 56, 64–67 (1948)); *see also Rylander*, 460 U.S. at 761 n.3 (explaining that a finding of present possession at the contempt proceedings was supported by a finding of past possession at the enforcement proceedings and the circumstances warranted such an inference). After considering all the evidence, the District Court held that Chabot failed to demonstrate his inability to comply with the Court's enforcement order. This conclusion was not dictated by Chabot's prior assertion of the privilege against self-incrimination.

\*　　\*　　\*

For the reasons stated, we will affirm the order of the District Court.

6